UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CURTIS HARRIS-BEY,

                    Plaintiff,                                    Case Number 16-12666
v.                                                                Honorable David M. Lawson
                                                                  Magistrate Judge Elizabeth Stafford
JOHN ALCODRAY and,
PAUL REASONER,

                    Defendants.
_____/

## ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, OVERRULING PLAINTIFF'S OBJECTIONS, AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The case is before the Court on objections filed by the plaintiff to a report issued by Magistrate Judge Elizabeth A. Stafford recommending that the defendants' motion for summary judgment be granted. The plaintiff, a Michigan prisoner, filed a lawsuit against two prison guards alleging via 42 U.S.C. § 1983 that they violated his constitutional rights by being disrespectful and degrading toward him, firing him from his prison food service position, and filing false misconduct reports as retaliation for constitutionally protected conduct. The Court referred the case to Magistrate Judge Stafford to conduct all pretrial proceedings. Thereafter, the defendants filed a motion for summary judgment, arguing that the plaintiff failed to exhaust his administrative remedies on some of his claims, and the remaining claims should be dismissed as a matter of law. On May 26, 2017, Judge Stafford filed her report recommending that the Court grant the motion and dismiss certain unexhausted claims without prejudice and the remaining claims with prejudice. The plaintiff filed timely objections, and the matter is before the Court for fresh review.

I.

The facts of the case come from the complaint and the discovery and affidavits summarized in the motion papers.  In 2016, plaintiff Curtis Harris-Bey was a prisoner incarcerated in the Gus Harrison Correctional Facility.  Defendants John Alcodray and Paul Reasoner were corrections officers there.  Harris-Bey alleged in his complaint that beginning on January 20, 2016, Alcodray was "disrespectful" and "degrading" toward him, fired him from his food service job, and retaliated against him by filing false misconduct reports.  Harris-Bey asserted that Alcodray called Harris-Bey and other inmates "idiots" for being in prison and did not allow them to speak while working in their food service job.  Harris-Bey stated that he informed Alcodray that he could talk and was not being disruptive.  He told Alcodray that he was "out of line."  Alcodray responded by firing Harris-Bey from his food service job.  Reasoner then sent Harris-Bey back to his cell, where he was confined until the end of his shift.

According to Harris-Bey, he was told during a call-out assignment to return to work the next day, but when he did, Alcodray told him that he was "laid in" until the misconduct ticket was adjudicated.  Alcodray ordered Harris-Bey back to his cell.  After returning to his cell, Harris-Bey told Reasoner that Alcodray was abusing his authority.  Later that evening, Harris-Bey received a misconduct ticket for disobeying a direct order, that is, not to talk during his work.  The report indicated that Harris-Bey had told Alcodray that he "did not have to listen to [Alcodray]."  On January 30, 2016, Harris-Bey was found not guilty of the reported misconduct, which he contends was written out of retaliation for returning to work and telling Reasoner that he was abusing his authority.

-2-

On January 22, 2016, Reasoner gave Harris-Bey a second misconduct ticket; Harris-Bey contends that the defendants "collaborated" against him on that charge. The ticket described Harris-Bey returning to work after being "laid in," which Reasoner wrote was a "direct contradiction of my order not to report." Harris-Bey was found guilty and received ten days of lost privileges. Harris-Bey asserted that the second misconduct report also was written out of retaliation.

On February 8, 2016, Harris-Bey was allowed to return to work, but alleged that Alcodray told him two days later to "get out of the kitchen, no matter what your pass, classification, or any body [sic] says." After reporting the incident to the warden, Harris-Bey was allowed to return to work. Harris-Bey alleges that on March 3, 2016, Alcodray called him into work and "immediately started threatening and attempted to cause intimidation, telling plaintiff to stop filing grievances on him or he will be a sorry ass." Harris-Bey asserted that all of these alleged actions constituted retaliation for the exercise of his First Amendment rights.

On July 13, 2016, Harris-Bey, proceeding *pro se*, filed his complaint against Alcodray and Reasoner for deprivation of civil rights. The Court referred this case to the magistrate judge for general case management. The defendants then filed a motion for summary judgment. The magistrate judge filed her report and recommendation on May 26, 2017.

In their motion, the defendants argued that the plaintiff cannot proceed on three of his claims because he did not exhaust his administrative remedies by following the procedures established by the Michigan Department of Corrections (MDOC). They point to the claim that Reasoner improperly confined the plaintiff to his cell on January 21, 2016, Alcodray's alleged retaliation, and Reasoner's retaliatory misconduct report of January 22, 2016. They conceded that the remaining claims were exhausted properly, but they argued that they are entitled to qualified immunity on

those.  The magistrate rejected the exhaustion argument on Alcodray's retaliation, but suggested that the other two claims were not exhausted properly and should be dismissed without prejudice.  She also recommended that the rest of the claims failed to establish constitutional violations, so the qualified immunity defense should succeed.  She recommended that the properly-exhausted claims be dismissed with prejudice.

II.

Harris-Bey filed timely objections to the magistrate judge's report and recommendation.  Objections to a report and recommendation are reviewed *de novo*.  28 U.S.C. § 636(b)(1).  "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  A judge . . . may accept, reject, or modify, in whole or in part, the findings to which objection is made."  28 U.S.C. § 636(b)(1).  The Sixth Circuit has stated that "[o]verly general objections do not satisfy the objection requirement." *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006).  "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie,* 50 F.3d 373, 380 (6th Cir. 1995).  "'[O]bjections disput[ing] the correctness of the magistrate's recommendation but fail[ing] to specify the findings . . . believed [to be] in error' are too general." *Spencer*, 449 F.3d at 725 (quoting *Miller*, 50 F.3d at 380).

A.

The defendants did not object to the report, including the magistrate judge's rejection of their exhaustion defense on the retaliation claim against Alcodray.  "[T]he failure to file specific objections to a magistrate's report constitutes a waiver of those objections." *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

-4-

Among the plaintiff's eight objections, in his first, second, and fifth objections he argues that he properly exhausted his claims against Reasoner by completing all three steps of the grievance process. As the magistrate judge explained, the Prison Litigation Reform Act's exhaustion requirement, *see* 42 U.S.C. § 1997e(a), is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001). "Exhaustion" under the PLRA means "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "Proper exhaustion" means "compliance with an agency's deadlines and other critical procedural rules . . . ." *Id.* at 90.

The Supreme Court has held that "failure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). This affirmative defense may serve as a basis for dismissal only if raised and proved by the defendants. *Ibid.*

Since the Supreme Court decided *Jones v. Bock*, the Sixth Circuit has stated that courts ought not impose severe technical requirements on prisoners who comply with the spirit and purpose of the administrative exhaustion rules. "[I]t is sufficient for a court to find that a prisoner's [grievance] gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006) (internal quotation marks and citation omitted).

A fair indicator that the purpose of the grievance was fulfilled is the prison's response to the inmate's complaint. If the information in the grievance is too vague or imprecise, a response so indicating would tell the interested parties that more detail is necessary. However, when the prison officials address the merits of the prisoner's complaint without mentioning a problem identifying the object of the grievance, the administrative system has worked, and the prison officials have had

-5-

the "opportunity to correct [their] own mistakes." *Woodford*, 548 U.S. at 89 (internal citation and quotation marks omitted).

The MDOC's Policy Directive dated July, 9, 2007 prescribes the administrative remedies available. First, the inmate must attempt to resolve any issue with the staff member involved within two days of becoming aware of a grievable issue. MDOC Policy Directive 03.02.130, ¶ P, at http://www.michigan.gov/documents/corrections/03_02_130_200872_7.pdf. If the issues are not resolved within five days, the inmate may file a Step 1 grievance using the appropriate form. The inmate should receive a response within fifteen days of filing his or her grievance. If the inmate is dissatisfied with the disposition of the grievance, or does not receive a response ten days after the due date, he or she may file a Step II grievance using the appropriate form. *Id.* at ¶ BB. Similarly, if the inmate is dissatisfied with the Step II response or does not receive a response for ten days after the response was due, he or she may file a Step III grievance. *Id.* at ¶ FF. Step III grievances are "logged on a computerized grievance tracking system." *Id.* at ¶ GG. The matter is fully exhausted after the disposition of the Step III grievance. *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir.2012)("A grievant must undertake all steps of the MDOC process for his grievance to be considered fully exhausted.").

Harris-Bey did not exhaust claims 1 and 2 properly according to the MDOC's procedures. The first claim — that Reasoner confined Harris-Bey to his cell on January 21, 2016 — was not properly exhausted because it was not included in the original grievance or any later grievances. Although in his grievance Harris-Bey referred to confinement by Reasoner, he did not specify the date of the event he was complaining about, and the other events in that portion of the grievance allegedly occurred on January 20 and 22, 2016. Harris-Bey's complaint in this case focuses on

-6-

Reasoner's actions of confining him to his cell on January 21. Because that detail was not included in the original grievance, it was not exhausted properly, inasmuch as the grievance did not provide the defendant with notice of the incident complained of. And because each individual claim must be exhausted before being brought into court, Harris-Bey cannot proceed on this unexhausted claim. *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001).

Nor was claim 2 — relating to the January 22, 2016 misconduct ticket Reasoner wrote as retaliation — properly exhausted. Harris-Bey did not allege retaliation at his misconduct hearing and, additionally, he did not appeal the finding of guilt following that hearing as required by MDOC Policy Directive 03.03.150 at VVV, which was the sole avenue for such an appeal. *Siggers v. Campbell*, 652 F.3d 681, 694 (6th Cir. 2011).

Harris-Bey's first, second, and fifth objections will be overruled.

## B.

The plaintiff's remaining objections address the magistrate judge's recommendation that the defendants be allowed qualified immunity on the rest of the plaintiff's claims. "Qualified immunity is an affirmative defense that shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 (6th Cir. 2005) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)). Once the qualified immunity defense is raised, "the plaintiff must show that (1) the defendant violated a constitutional right and (2) that right was clearly established." *McDonald v. Flake*, 814 F.3d 804, 812 (6th Cir. 2016) (citing *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 680 (6th Cir. 2013)). The plaintiff must clear both hurdles, but the Court may take up the questions in either order. *Pearson v. Callahan*, 555 U.S. 223,

-7-

236 (2009) (abrogating in part *Saucier*, 533 U.S. at 201). The magistrate judge addressed only the first element of the defense, concluding that the defendants did not violate any of the plaintiff's constitutional rights.

In his third objection, Harris-Bey argues that Alcodray retaliated against him following Harris-Bey's protected conduct. In his fourth objection, Harris-Bey argues that all three elements have been met to establish a violation of his First Amendment rights. In his sixth objection, he argues that the alleged deprivation of his First Amendment rights constitutes a "sufficient injury" in the Sixth Circuit. In his seventh objection, Harris-Bey argues that the defendants violated clearly established statutory and constitutional law and therefore are not entitled to qualified immunity. In his eighth objection, Harris-Bey argues that summary judgment is not appropriate because there are several genuine issues as to material facts, which "[t]he Court is not supposed to decide."

When it is raised in a motion for summary judgment, as here, courts must weave the summary judgment standard into each step of the qualified immunity analysis. *Scott v. Harris*, 550 U.S. 378, 380 (2007). That means that "[t]he court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Alexander v. CareSource*, 576 F.3d 551, 557-58 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 251-52). When the defendants raise qualified immunity as a ground for summary judgment, the court must view the facts in the light most favorable to the plaintiff. *Saucier v. Katz*, 533 U.S. 194, 201 (2001) .

Even under the plaintiff-favorable standard, however, Harris-Bey cannot prevail. The defendants presented their arguments accepting the plaintiff's version of the facts (as they were

-8-

required to do, *see Scott v. Harris*, 550 U.S. 378, 380 (2007)), and the magistrate judge analyzed the case in that light.

Although the plaintiff alleged Eighth Amendment claims in his complaint, he did not mention them in his objections to the magistrate judge's report recommending that they be dismissed. As noted earlier, "the failure to file specific objections to a magistrate's report constitutes a waiver of those objections." *Cowherd*, 380 F.3d at 912. Instead, the plaintiff's objections focus exclusively on his First Amendment claims.

First Amendment retaliation claims generally are analyzed "under a burden-shifting framework." *Wenk v. O'Reilly*, 783 F.3d 585, 593 (6th Cir. 2015). The plaintiff must plead a *prima facie* case of retaliation, by alleging facts showing that "(1) he engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; [and] (3) there is a causal connection between elements one and two — that is, the adverse action was motivated at least in part by his protected conduct." *Ibid.* (quoting *Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 294 (6th Cir. 2012)).

There is little doubt that filing a grievance amounts to protected activity under the First Amendment. *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) (holding that although the precise contours of free speech rights in the prison setting are not clear, "[a]n inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf"). The magistrate judge concluded, however, that Harris-Bey failed to establish a fact question on the second element of the test, because the actions taken by the defendants were inconsequential.

When determining whether a retaliatory action is sufficiently severe to satisfy the second element of the *Wenk* test, the Sixth Circuit has adopted "the standard suggested by Judge Posner in

*Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982), that an adverse action is one that would 'deter a person of ordinary firmness' from the exercise of the right at stake." *Thaddeus-X v. Blatter*, 175 F.3d 378, 396 (6th Cir. 1999).  "'[S]ince there is no justification for harassing people for exercising their constitutional rights [the effect on freedom of speech] need not be great in order to be actionable.'"  *Id.* at 397 (quoting *Bart*, 677 F.2d at 625).  The plaintiff "need not show [that he was] actually deterred from exercising [her] right to free speech."  *Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 822 (6th Cir. 2007).  On the other hand, however, "[a] chilling effect sufficient under this prong is not born of *de minimis* threats or inconsequential actions, but neither does the requisite showing permit solely egregious retaliatory acts to proceed past summary judgment."  *Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 822 (6th Cir. 2007).

Harris-Bey alleged in his complaint that the defendants retaliated against him for filing a grievance.  That conduct consisted of telling him to "shut his mouth," firing him from his job, and filing a false misconduct report.  However, the plaintiff also alleges he was not disciplined as a result of the false report.  Additionally, although he was temporarily fired from his job, he was reinstated after being found not guilty of misconduct.  The misconduct ticket that was dismissed was not lodged against him after he filed any grievances against the defendants.  And the second ticket resulted in a finding of misconduct, indicating that the plaintiff was guilty of an infraction of the prison rules.  It is well established that "'the defendants can avoid liability by showing that [they] would have taken the same action even in the absence of the protected conduct.'"  *Wenk*, 783 F.3d at 593 (quoting *Gaspers v. Ohio Dep't of Youth Servs.*, 648 F.3d 400, 412 (6th Cir. 2011)).  Moreover, "[s]tanding in his cell in a prison, an inmate is quite limited in what he can say; his

government jailor can impose speech-limiting regulations that are 'reasonably related to legitimate penological interests.'" *Thaddeus-X*, 175 F.3d at 389 (quoting *Turner v. Safley*, 482 U.S. 78 (1987)).

The magistrate judge was correct in determining that the conduct that the plaintiff alleged as retaliation was not sufficiently serious as to satisfy the second element of the *Wenk* test. The plaintiff's remaining objections, therefore, will be overruled.

III.

The Court's *de novo* review of the defendants' motion for summary judgment and the plaintiff's response leads to the conclusion that the magistrate judge applied the correct substantive law to the facts of the case.

Accordingly, it is **ORDERED** that the magistrate judge's report and recommendation [dkt. #19] is **ADOPTED**.

It is further **ORDERED** that the plaintiff's objections to the report and recommendation [dkt. #20] are **OVERRULED**.

It is further **ORDERED** that defendant's motion for summary judgment [dkt. #14] is **GRANTED**.

It is further **ORDERED** that the plaintiff's unexhausted claims are **DISMISSED WITHOUT PREJUDICE**, and the remaining claims in the complaint are **DISMISSED WITH PREJUDICE**.

                                        s/David M. Lawson                    
                                        DAVID M. LAWSON
                                        United States District Judge

Dated:   July 24, 2017

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 24, 2017.

s/Susan Pinkowski
SUSAN PINKOWSKI